**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CYNTHIA ROSE CARL, | CASE NO. 3:15-cv-00895-GBC |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| | MEMORANDUM |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | Docs. 1, 11, 12, 13, 15, 16, 17 |
| Defendant. | |

## MEMORANDUM

### I.    Procedural Background

On April 30, 2012, Cynthia Rose Carl ("Plaintiff") filed as a claimant for disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1181-1183f, with a claimed disability onset date of May 1, 1996. (Administrative Transcript (hereinafter, "Tr."), 9).  After the claim was denied at the initial level of administrative review, the Administrative Law Judge (ALJ) held a hearing on October 15, 2013.  (Tr. 29-43).  On December 11, 2013, the ALJ found that Plaintiff was not disabled within the meaning of the Act.  (Tr. 6-24).  Plaintiff sought review of the unfavorable decision, which the Appeals Council denied on March 9, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.  (Tr. 1-5).

On May 7, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration ("SSA") denying social security benefits.  (Doc. 1).  On July 10, 2015, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.  (Doc. 11, 12).  On August 24, 2015, Plaintiff filed a brief in support of the appeal.  (Doc. 13 ("Pl. Brief")).  On August 28, 2015, the parties consented to the undersigned Magistrate Judge's jurisdiction.  (Doc. 15).  On September 28, 2015, Defendant filed a brief in response.  (Doc. 16 ("Def. Brief")).  On October 8, 2015, Plaintiff filed a reply brief.  (Tr. 17 ("Reply")).

## II. Relevant Facts in the Record

### A. Education, Age, and Vocational History

Plaintiff was born in August 1961, and thus was classified by the regulations as a person closely approaching advanced age as of the date of the ALJ's decision. 20 C.F.R. § 404.1563(d); (Tr. 19).  Plaintiff has a high school education and has not worked in over two decades prior to her administrative hearing.  (Tr. 32, 40, 139).  Plaintiff testified that she believed herself to be unable to work due to difficulty maneuvering and problems dealing with stressful situations and social interactions.  (Tr. 37).  Plaintiff testified that she lived in an apartment with her disabled husband, her son, and her daughter-in-law.  (Tr. 32-33).  Plaintiff was able

to shower and dress herself, cook, shop for groceries, do the dishes, and wash laundry.  (Tr. 33-34).  To the extent that she testified to difficulty with performing various activities, these difficulties were due to her alleged physical, not mental, impairments.  (Tr. 34-35).  Plaintiff testified that she had difficulty sleeping at night due to pain and depression, and spent most of the day either watching television or reading books.  (Tr. 38).

In an Adult Function report that Plaintiff submitted with her application for disability benefits, Plaintiff endorsed additional activities such as caring for her husband by making sure he got his medication and helping him get in and out of the shower.  (Tr. 165).  Plaintiff also acknowledged that she was able to pay bills, count change, handle a savings account, and use a checkbook/money orders.  (Tr. 167).  Additionally, Plaintiff noted that she regularly read books, watched television, and played cards and board games.  (Tr. 168).  She reported that she was able to finish what she started, followed written and spoken instructions "well," and got along "fine" with authority figures. (Tr. 169-70).  Although Plaintiff had difficulty handling stress, she handled changes in routine "ok."  (Tr. 170).

///

///

///

## B.  Relevant Treatment History and Medical Opinions[1]
### 1.  NHS Edgewater Psychiatric Center[2]: George A. Wiswesser, M.D.

On January 26, 2012, Plaintiff began individual therapy and medication management sessions at NHS of Pennsylvania.  (Tr. 290).  From January 2012 to September 2013, Plaintiff was compliant with her medications of Paxil and Wellbutrin and it was repeatedly reported that she was making progress throughout the course of her treatment.  (Tr. 257, 272-364).  During her therapy sessions, Plaintiff described anxiety and depression related mainly to her husband's poor health and the family's precarious financial situation.  (Tr. 272-364). Plaintiff also reported feelings of being overwhelmed by being left in charge of her grandchildren while her daughter attended school (leaving Plaintiff with only one free day per week), and while her son-in-law was ill.  (Tr. 291, 349).  Plaintiff's therapist reported that she was progressing and learning how to process negative thoughts and to reduce depressive thoughts.  (Tr. 272-364).[3]

On April 9, 2012, Dr. Wiswesser evaluated Plaintiff and rendered an opinion regarding the extent of her psychological impairments.  (Tr. 205-207).  Plaintiff reported that after high school, she primarily did factory work.  (Tr. 206).  Dr.

---

[1] Because Plaintiff does not dispute any of the ALJ's findings with regard to her alleged physical impairments, the Court's review will focus on the facts relevant to Plaintiffs contested mental impairments.

[2] Although the name of the institution is listed differently as either "NHS" or "Edgewater Psychiatric Center," the National Provider Identifier of 1194738385 in the government database https://npiregistry.cms.hhs.gov, lists the institution as "NHS Edgewater Psychiatric Center."

[3] It appears that Plaintiff provided the therapy session records on August 13, 2013, after the opinion rendered by Dr. Gavazzi on June 25, 2012.

Wiswesser noted that he was also treating Plaintiff's husband. (Tr. 205). Plaintiff reported that she worried about her husband who had been expressing suicidal ideas for the past couple of months. (Tr. 205). Plaintiff reported that she has been crying daily for the past couple of months, and had trouble sleeping every night because she worried about what her husband might do since he did "make kind of a suicidal attempt" in January and her husband was hospitalized. (Tr. 205). Plaintiff reported that in the past, she was stressed by her maternal grandmother's threats of suicide prior to her suicide. (Tr. 205).

Dr. Wiswesser noted that Plaintiff had been treated for depression around the time of her mother's death in 1995 and her grandmother's suicide the following year and had been taking Paxil "off and on" for the past several years. (Tr. 205). Plaintiff reported that a doctor told her an EKG revealed that she had a couple of minor heart attacks. (Tr. 205). Plaintiff reported that she has not been sleeping well due to her fear that she has to watch her husband every time he wakes up in order to prevent him from committing suicide. (Tr. 207).

Dr. Wiswesser noted that Plaintiff cried throughout the interview and denied any suicidal ideation or any hallucinations. (Tr. 206). Dr. Wiswesser stated that he saw "no evidence of any overt thought disorder, although she [did] tend to have very concrete thought processes." (Tr. 207). Dr. Wiswesser's clinical impressions included that Plaintiff had: 1) "major depression, recurrent, anxiety features;" 2)

"exogenous obesity, essential hypertension, myocardial infarction;" and, 3) a GAF score of 40.[4]  (Tr. 207).  Dr. Wiswesser continued Plaintiff on 40 mg of Paxil and added 150 mg of Wellbutrin SR, recommended that Plaintiff obtain a therapist, and noted that he would continue "conjoined treatment of her and her husband."  (Tr. 207).

## 2.  Family Care Millersburg: Meghan Castagnero, P.A.; Frederick Seidel, M.D.

On June 6, 2012, it was noted that Plaintiff had anxiety and depression.  (Tr. 242).  Ms. Castagnero noted that Plaintiff was agitated and anxious with mood swings and obsessive thoughts, but she was well oriented and demonstrated the appropriate mood and affect.  (Tr. 244).  Ms. Castagnero prescribed Wellbutrin.  (Tr. 245).

---

[4] See *Schwartz v. Colvin*, 3:12-CV-01070, 2014 WL 257846 at *5, n. 15 (M.D. Pa. Jan. 23, 2014) ("The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed.1994). . . . The GAF is within a particular range if *either* the symptom severity *or* the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the *worse* of the two. Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20. . . . A GAF score of 21–30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. A GAF score of 31–40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.* A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. *Id.* A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.* A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. *Id.*").

One month later, on July 12, 2012, Dr. Seidel noted in a review of symptoms that Plaintiff was "[n]egative for anxiety and depression," and was well oriented with appropriate mood and affect.  (Tr. 247-48).  On November 20, 2012, Dr. Seidel noted that Plaintiff was oriented and demonstrated an appropriate mood and affect.  (Tr. 252).

### 3.  Mental Residual Functional Capacity Assessment: John Gavazzi, Psy.D.

On June 25, 2012, Dr. Gavazzi reviewed Plaintiff's treatment records, including the April 2012 assessment from Dr. Wiswesser (Tr. 46) and opined that Plaintiff was not significantly limited in the ability to: 1) remember locations and work-like procedures; 2) understand and remember very short and simple instructions; 3) carry out very short and simple instructions; 4) maintain attention and concentration for extended periods; perform activities within a schedule maintain regular attendance and be punctual within customary tolerances; 5) sustain an ordinary routine without special supervision; 6) work in coordination with or in proximity to others without being distracted by them; 7) make simple work-related decisions; 8) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 49-50).  Dr. Gavazzi explained that Plaintiff could "make simple decisions" "maintain regular

attendance," "be punctual," and could "carry out very short and simple instructions." (Tr. 50).

Dr. Gavazzi further opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions and added that Plaintiff could "understand, retain, and follow simple job instructions, i.e., perform one- and two-step tasks. . . . [and could] perform simple, routine, repetitive work in a stable environment." (Tr. 49-50).

Dr. Gavazzi noted that, although Plaintiff took psychotropic medications for major depressive disorder and anxiety disorder, she had no history of psychiatric hospitalizations and was not participating in psychotherapy. (Tr. 50). Dr. Gavazzi additionally noted that, despite her impairments, Plaintiff managed her activities of daily living appropriately. (Tr. 50). Dr. Gavazzi concluded that Plaintiff could "perform simple, routine, repetitive work in a stable environment." (Tr. 50).

### 4. Dr. Miller

In a Plaintiff-supplied reported dated August 20, 2013, Dr. Miller completed a checkmark questionnaire assessing the degree of Plaintiff's psychiatric limitations. (Tr. 262-64). There are no treatment records from this doctor and no rationale provided for his assessment. (Tr. 262-64). Dr. Miller checked boxes indicating that Plaintiff had: 1) a disturbance of mood accompanied by full or partial depressive syndrome; 2) a pervasive loss of interest in almost all activities,

sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking; 3) marked restrictions in activities of daily living and maintaining social functioning; 4) marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and, 5) marked episodes of deterioration or decompensation in work or work-like settings that cause Plaintiff to withdraw from the situation.  (Tr. 262-64).

### III.   Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A).  A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits.  20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428.  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed.  20 C.F.R. § 404.1520(a)(4).  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work.  20 C.F.R. §§ 404.1520, 416.920.  Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The claimant bears the burden of proof at steps one through four.  *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Id.*  The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance. *Jones*, 364 F.3d at 503. If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

## A. Weight Accorded to Medical Opinions

Plaintiff argues that the ALJ failed to accord sufficient weight to the opinions of Drs. Wiswesser and Miller. Pl. Brief at 3-10. Plaintiff also argues that

the ALJ accorded too much weight to the June 2012 non-examining opinion of Dr. Gavazzi, given that Dr. Gavazzi partially based his opinion on Plaintiff's lack of psychotherapy treatment when records of contemporaneous psychotherapy treatment starting February 1, 2012, was supplied by Plaintiff a year after Dr. Gavazzi's opinion.

In briefing, although Plaintiff's attorney initially refers to Dr. Wiswesser as a "treating physician," Plaintiff's attorney proceeds to argue the examining non-treating physician standard in disagreeing with the ALJ's according less weight based on "one-time evaluation." Pl. Brief at 6. Additionally, Plaintiff's attorney refers to Dr. Miller as Plaintiff's "long time treating physician." Pl. Brief at 4. The Court noted that the Plaintiff-supplied report from Dr. Miller consists of a checkmark questionnaire without any reference to treatment records from this doctor and no rationale provided for his assessment. (Tr. 262-64). Defendant points out that "no treatment notes from Dr. Miller are included anywhere in the record. It is unclear what, if any, treatment he provided to Plaintiff and when such treatment may have occurred." Def. Brief at 9 n. 4. Plaintiff's attorney fails address Defendant's arguments regarding whether Drs. Wiswesser and Miller were treating physicians or otherwise direct the Court to any evidence demonstrating that Drs. Wiswesser and Miller were treating physicians. The Court concludes that the opinions of Drs. Wiswesser and Miller are not treating physician opinions. *See*

20 C.F.R. § 404.1527(c)(2)(i)  (explaining that the treating physician opinion is premised upon seeing the claimant "a number of times and long enough to have obtained a longitudinal picture of [a claimant's] impairment"); *see also Hartzell v. Colvin*, No. 3:14-CV-00936-GBC, 2015 WL 5829780, at *5 (M.D. Pa. Oct. 1, 2015).

For weighing all medical opinions, the Commissioner considers the factors enumerated in 20 C.F.R. §§ 404.1527(c), 416.927(c).  Pursuant to subsection (c)(3), "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion."  Pursuant to subsection (c)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."  Pursuant to subsection (c)(5), more weight may be assigned to specialists, and subsection (c)(6) allows consideration of other factors which "tend to support or contradict the opinion."  20 C.F.R. §§ 404.1527(c), 416.927(c).

Generally, there is a hierarchy of weight allotted between three types of physician opinions: opinions of those who treat the claimant (treating physicians) are given more weight than opinions by those who examine but do not treat the claimant (examining physicians), and the opinions of examining physicians are

given greater weight than the opinions of those who neither examine nor treat the claimant (non-examining physicians).   *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2).   However, this hierarchy is not absolute.   *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see e.g.*, *Johnson v. Barnhart*, 89 F. App'x 364, 368 (3d Cir. 2004) (affirming rejection of examining physician opinion in favor of opinion of non-examining physician); *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) (noting criteria necessary to reject a treating physician's opinion); *Morris v. Barnhart*, 78 Fed.Appx. 820, 824-25 (3d Cir. 2003) (affirming rejection of treating physician opinion which adopted subjective reports of claimant).

When a physician's opinion is based on subjective, rather than objective, information, and the ALJ has properly found a claimant's subjective claims to be less than fully credible, an ALJ may assign less weight to the opinion:

> [T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion. An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) ("The ALJ thus disregarded Dr. Bliss' opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.").

*Morris v. Barnhart*, 78 Fed.Appx. 820, 824-25 (3d Cir. 2003) (some internal citations omitted).  If a non-examining opinion is better supported, more consistent with evidence, or authored by a specialist, then it may be entitled to greater weight

than examining or treating opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (Non-examining consultants are "highly qualified…medical specialists who are also experts in Social Security disability evaluation."); *Johnson v. Barnhart*, 89 F. App'x 364, 368 (3d Cir. 2004). An ALJ may reject an examining physician's opinion in favor of a non-examining physician opinion on the basis of contradictory evidence. *See* 20 C.F.R. 404.1527(c); *Johnson v. Barnhart*, 89 F. App'x 364, 368 (3d Cir. 2004); Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936 (ALJ may rely on non-medical evidence which is inconsistent with treating physician's opinion); *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014).

Substantial evidence supports the ALJ according less weight to Dr. Wiswesser's April 2012 assessment. The Court observes that "[m]edical opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "An ALJ however, need not proscribe weight to a general

statement by a treating or consulting physician." *Clark v. Colvin*, No. CV 12-1116-RGA-MPT, 2013 WL 3834046, at *10-11 (D. Del. July 24, 2013) *report and recommendation adopted sub nom. Clark v. Astrue*, No. CV 12-1116-RGA, 2013 WL 4407880 (D. Del. Aug. 15, 2013).    While "symptoms, diagnosis and prognosis" fall within the definition of "medical opinion," more probative opinions are those that "that reflect judgments about the nature and severity of [a claimant's] impairment(s)" and particularly describe what a claimant can or cannot do in a typical work setting.  *See e.g.*, *Clark v. Colvin*, No. CV 12-1116-RGA-MPT, 2013 WL 3834046, at *10-11 (D. Del. July 24, 2013); *John v. Colvin*, No. CIV.A. 12-1292, 2013 WL 3369118, at *8 (W.D. Pa. July 2, 2013) *Fry v. Astrue*, No. 3:09CV747, 2010 WL 2891493, at *7 (W.D. Pa. July 21, 2010).  Dr. Wiswesser's April 2012 assessment does little to reflect judgments about the nature and severity of Plaintiff's impairments and how such impairments particularly describe what she can or cannot do in a typical work setting.  Moreover, Dr. Gavazzi reviewed Wiswesser's April 2012, which included the GAF score of 40, and still opined that Plaintiff's psychological impairments would not prevent her from being able to work.  (Tr. 46, 50).

The Court concludes that substantial evidence supports the ALJ's reliance on the opinion of Dr. Gavazzi and according little weight to Dr. Miller.  Medical opinions consisting largely of checked boxes absent of narrative citing to reasons

and evidence to support findings are afforded less weight than opinions which include detailed narratives citing to objective medical evidence.  *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (explaining more weight is given to opinions that include objective medical evidence); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("[F]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."); *Knox v. Comm'r of Soc. Sec.*, 365 Fed.Appx. 363, 367-67 (2010) (finding that ALJ properly discounted treating physician's check-list opinion because its conclusions were not supported by objective narrative of any specificity.).

While it is true that Dr. Gavazzi's June 2012 opinion occurred before the Plaintiff-supplied August 2013 opinion from Dr. Miller and Dr. Gavazzi did not have the Plaintiff-supplied treatment records from January 2012 to September 2013 (Tr. 272-362), Dr. Miller's cryptic check-box opinion was properly accorded less weight and the totality of the treatment records from January 2012 to September 2013 does not demand a different conclusion than that reached by the ALJ regarding allocating greater weight to Dr. Gavazzi's opinion.  As the Third Circuit has observed:

> because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency

medical ... consultant's finding that the impairment(s) is not
equivalent in severity to any impairment in the Listing," is an update
to the report required. SSR 96–6p (July 2, 1996) (emphasis added).

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).   In this

instance, it was reasonable for the ALJ to determine that the additional evidence

would not have changed the State agency medical consultant's findings.   *See*

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361.

The ALJ addressed the evidence of medical treatment and opinions that was

submitted after Dr. Gavazzi's opinion.   (Tr. 13, 16).   From January 2012 to

September 2013, Plaintiff was compliant with her medications of Paxil and

Wellbutrin and was repeatedly reported as making progress throughout the course

of her treatment.   (Tr. 16, 257, 272-364).   Substantial evidence supports that the

subsequent treatment evidence did not undermine the conclusions in Dr. Gavazzi's

opinion and substantial evidence supports the ALJ's allocating little weight to the

subsequent opinion of Dr. Miller.   *See Hahn v. Colvin*, No. 3:13-CV-2493-GBC,

2015 WL 2384184, at *19 (M.D. Pa. May 19, 2015) (affirming ALJ decision to

allocate more weight to an opinion notwithstanding subsequent evidence).

Based on the foregoing substantial evidence supports the ALJ's allocation of

weight to the opinions of Drs. Gavazzi, Miller, and Wiswesser.

## 2. Omission of One- to Two-Step Limitation in Residual Functional Capacity ("RFC")

Plaintiff's attorney argues that "there is a disconnect between the ALJ's mental RFC finding for 'simple, routine, repetitive tasks', Tr. 14, and the specific and particular limitations described by Dr. Gavazzi, that Plaintiff is limited to the performance of 'one- and two-step tasks ... in a stable environment.'"  Reply Brief at 1-2.

The *Dictionary of Occupational Titles* (DICOT) lists requirements for each occupation in several different categories, including Specific Vocational Preparation (SVP) and General Educational Development (GED).  *Abney v. Colvin*, No. CV 13-6818, 2015 WL 5113315, at *3 (E.D. Pa. Aug. 31, 2015).  GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" and is measured in three areas: Reasoning Development, Mathematical Development, and Language Development. DICOT, Appendix C, 1991 WL 688702.  Reasoning Development is rated on a six-level scale.  *Id.*  A reasoning level of 1 corresponds to the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  *Id.*  A reasoning level of 2 corresponds to the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."  *Id.*

The ALJ's RFC determination limited Plaintiff to "simple, routine, repetitive tasks." (Tr. 14). For the weight allotted to Dr. Gavazzi's opinion, the ALJ stated:

> the undersigned has considered the assessment of the State agency psychologist who found that the claimant can understand, retain, and follow simple job instruction and perform simple, routine repetitive tasks in a stable work environment. The undersigned gives significant weight because it was generally consistent with the clinical observations and mental status examinations demonstrating good overall mental functioning. Further, the assessment was generally consistent with the conservative and routine treatment as well as the claimant's admitted daily activities and functional abilities that included assisting in the care of her husband.

(Tr. 18) (internal citation omitted). Dr. Gavazzi found that Plaintiff was not significantly limited in the ability to do most work related functions and moderately limited in her ability to understand, remember and carry out detailed instructions. (Tr. 49-50). Dr. Gavazzi gave the example that Plaintiff could "understand, retain, and follow simple job instructions, i.e., perform one- and two-step tasks. . . . [and could] perform simple, routine, repetitive work in a stable environment" (Tr. 49-50).

Essentially, the issue is whether the ALJ's omission of "one- and two-step tasks" from the RFC is a material omission to warrant reversal. Although the instant matter involves the fifth step of the sequential analysis regarding whether there is a conflict between an RFC's limitation to simple and routine work and job that requires a level 3 reasoning, the Court finds *Zirnsak v. Colvin* to be instructive on whether slight differences between the reasoning levels are materially

significant. *See Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014).  The Third Circuit in *Zirnsak v. Colvin*, found persuasive cases which held that there is no "*per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *See Zirnsak v. Colvin*, 777 F.3d 607, 618.  Giving Plaintiff the most benefit, the Court will assume that Dr. Gavazzi's opinion reflects a reasoning level of one, (DICOT, Appendix C, 1991 WL 688702), and that the ALJ's omission of "one- and two-step tasks" entailed that the RFC adopted a level 2 reasoning corresponding to the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* DICOT, Appendix C, 1991 WL 688702.  With Dr. Gavazzi's opinion reflecting a reasoning level of 1 and the RFC reflecting a reasoning level of two, such a difference does not amount to a reversible error. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *cf. Zirnsak v. Colvin*, 777 F.3d 607, 618.  Moreover, it is permissible for the ALJ to reject all opinions from non-treating physicians to independently formulate the RFC based on the medical and non-medical evidence in totality.  *See* 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1545(a), 416.945(a); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).   According to sections 404.1527(d)(2) and 416.927(d)(2), the final responsibility for deciding a claimant's residual functional

capacity is an issue reserved to the Commissioner.   20 C.F.R. §§ 404.1527, 416.927(d)(2).[5]

The Court finds the Third Circuit opinion in *Titterington v. Barnhart*, relevant to the facts of this case.  *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  In *Titterington v. Barnhart*, the plaintiff argued that where the only finding that he could perform sedentary work came from the state agency, a source the ALJ discounted, the ALJ erred in his finding that his RFC included sedentary work.  *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).  The Third Circuit concluded that:

> [t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties. A reasonable factfinder, considering the evidence in the record, could well have agreed with the ALJ that [the plaintiff] could perform sedentary work.

*Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).   Similarly, a reasonable factfinder, considering the evidence in the record, could well have agreed with the ALJ that Plaintiff was capable of level two reasoning, could perform work exceeding one- to two-step tasks, and able to perform the jobs

---

[5] In 1991, the Social Security Administration amended the Regulations regarding medical opinion evidence and enacted 20 C.F.R § 404.1527(c).  *See* 56 FR 36932–01.  While the 1991 Amendments did not abrogate the rule that an ALJ's lay interpretation of medical evidence is generally insufficient to reject a treating source opinion (*Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 *passim* (M.D. Pa. Jan. 13, 2016)), such is not the case for non-treating medical opinions.  *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 *passim* (M.D. Pa. Jan. 13, 2016) (discussing the effect of the 1991 Amendments); *accord Tilton v. Colvin*, 1:14-cv-02219-YK-GBC, at ECF 15 (Mar. 2016).

identified in the ALJ's decision. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *cf. Zirnsak v. Colvin*, 777 F.3d 607, 618-19 (demonstrating that the difference between the reasoning levels is not so substantial as to create a per se error when a higher reasoning level is used in the disability decision process).

The Court finds that based on the above discussion, substantial evidence supports the ALJ's characterization of Plaintiff's RFC. The ALJ reviewed all of the relevant evidence and provided a clear explanation of the reasons for his determination and ALJ's RFC was consistent with medical evidence and sufficiently addressed Plaintiff's limitations. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); Fargnoli, 247 F.3d at 41 (3d Cir. 2001).

## IV.    Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.


Dated: May 11, 2016                             s/Gerald B. Cohn
                                         GERALD B. COHN
                                    UNITED STATES MAGISTRATE JUDGE